IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SEAN C. QUAST and
SUSAN R. QUAST,

                Plaintiffs,                  OPINION AND ORDER

   v.                                                    09-cv-675-wmc

STATE FARM FIRE & CASUALTY
COMPANY,

                Defendant.

---

Plaintiffs Sean and Susan Quast allege that defendant State Farm Fire & Casualty Company breached their insurance contract and acted in bad faith by denying plaintiffs' property loss claim. Plaintiffs filed this civil action in the Circuit Court for Barron County, Wisconsin and defendant timely removed the case to this court under 28 U.S.C. §§ 1441 and 1446. Defendant eventually filed a motion for summary judgment on the Quasts' bad faith and statutory interest claims. (Dkt. #14.) Because no reasonable jury could find that State Farm acted without a reasonable basis in denying plaintiffs' property loss claim on the undisputed facts of record, its motion for partial summary judgment will be granted.

UNDISPUTED FACTS[1]

---

[1] The court finds the following facts taken from the parties proposed findings of fact to be material and undisputed.

Plaintiffs Sean and Susan Quast are both citizens of Minnesota. Defendant State Farm is an Illinois corporation with its principal place of business in Illinois.[2] The Quasts obtained insurance from State Farm on their lake home located at 1534 2 ¾ Street, Turtle Lake, Wisconsin 54889-4405. The homeowners policy, no. 49-GC-3502-1, was effective from September 20, 2007, to September 20, 2008. The policy states, in relevant part:

> **Concealment or Fraud.**
> a. We do not provide coverage for you or any other **insured**, if you or any other **insured** has concealed or misrepresented any fact or circumstance relating to this insurance, whether before or after a loss.
>
> However, this Condition applies only to facts or circumstances:
>
> (1) on which we rely and are either (a) material, or (b) made with intent to deceive; or
>
> (2) which contribute to the loss.

On September 19, 2008, State Farm received notice that personal property had been stolen from the Quasts' Turtle Lake home two days before, and that the Quasts were submitting a claim for the alleged loss. State Farm began processing the Quasts' property loss claim in accordance with its usual and customary practices and procedures.

Among other steps, State Farm utilizes indicators of suspicious loss promulgated by the National Insurance Crime Bureau (NICB), a not-for-profit organization

---

[2] When an insured sues its insurer, as is the case here, there is not a "direct action" as that phrase is used in 28 U.S.C § 1332(c)(1) because a "direct action" means "[a] case[] in which a person with a claim against the insured sues the insurer directly." *Indiana Gas Co. v. Home Ins. Co.*, 141 F.3d 314, 317 (7th Cir. 1998). Accordingly, there is complete diversity between plaintiffs and defendant. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 511 n.1 (7th Cir. 2008).

established to prevent, detect and deter insurance fraud.  Although the NICB suspicious loss indicators are used by State Farm and other insurance companies as guidelines in claim investigations to identify suspicious or potentially fraudulent claims, the existence of one or more indicators does not necessarily mean a claim is fraudulent.

The Quasts' claim triggered two of NICB's suspicious loss indicators:  (1) losses that occurred just before coverage ceased; and (2) same loss claimed by insured within preceding year.  The first indicator was triggered because the Quasts' homeowners policy was set to expire only three days after the alleged theft was discovered, and two months earlier the Quasts had been informed that their homeowners policy would not be renewed due to their loss history.  The second indicator was triggered because the Quasts had filed two other claims within a year of the Quasts' claimed September 19, 2008 property loss.  Those losses totaled in excess of $70,000 for property theft occurring at the same location.

In light of these two red flags, State Farm decided that the appropriate next step in the claims process would be to obtain recorded statements from the Quasts.  On September 26, 2008, Susan Quast met with a State Farm representative, reported having little information about the claim and suggested it would be best to speak with Sean. State Farm proceeded to take Sean Quast's recorded statement that same day.  Among other things, Sean reported the following debts:  he had student loan debt in excess of $100,000 and the Quasts had over $15,000 in credit card debt, two mortgages each for approximately $200,000; and owed $30,000 on a recreational vehicle and $15,000 on a van.  Before this initial interview, Sean had explained he actually owed less than

3

$100,000 on his student loan debt because he had entered into a settlement agreement in 1994 regarding some of his student loans.

Sean also reported Susan and his combined annual income was probably between $50,000 to $60,000, depending on how taxes were applied. At that time, the Quasts also owned commercial property in White Bear Lake, Minnesota, which they purchased for $240,000 in 1997 and had appreciated in value to between $650,000 and $1 million. According to Sean, the Quasts regularly derived rental income from that commercial property in an amount between $6000 and $7000 per month, less $4300 per month in expenses.[3] In addition, the Quasts were current on all payments, had never filed bankruptcy, never had a mortgage foreclosed upon, and never had any personal property repossessed. Finally, Sean reported a number of stolen items, but indicated that he had not made a complete list, nor had he reached a monetary figure for the total value of stolen property.

State Farm next contacted the Quasts four days after taking the recorded statement and requested completion of "Personal Property Inventory" worksheets to document the items allegedly stolen. State Farm also requested that the Quasts provide any documentation they had demonstrating their past ownership of these items.

The following month, State Farm received the Quasts' worksheets listing 38 items as stolen with an approximate value of $57,000. For the majority of the items listed, the Quasts did not provide sales receipts, credit card statement verification or canceled

---

[3] The Quasts have offered other facts about their financial situation during this lawsuit, but those facts were not before State Farm during its assessment of the Quasts' property loss claim.

checks. Instead, the Quasts explained that many items came with their cabin, were purchased with cash, were obtained for free or were obtained by barter or trade.

At that point in the investigation, State Farm considered the initial NICB indicators unresolved. Further, State Farm found additional indicators had been triggered, including: (1) the insured was unusually knowledgeable about insurance terminology and the claims settlement process; (2) losses were incompatible with the insured's residence, occupation and/or income; and (3) the insured could not provide bank or credit card records for recent purchases of significant value. State Farm also viewed the Quasts' reported debt to income ratio as raising suspicion about the property loss claim.

The unresolved NICB indicators resulted in transfer of the Quasts' property loss claim to State Farm's Special Investigative Unit (SIU) for further investigation. The SIU has special training to evaluate and attempt to resolve potentially fraudulent claims. After the file was transferred to the SIU, additional recorded statements of the Quasts were taken. A meeting with Sean at the insured property was also scheduled to conduct an inspection. State Farm took photographs of property damage that the Quasts identified as resulting from the theft and collected other photos from the Quasts. In addition, State Farm obtained the Quasts' credit reports and contacted the Barron County Sheriff's Department to obtain its file for the Quasts' reported theft and to speak with the officer who investigated the theft. Despite this, State Farm remained unable to resolve the NICB fraud indicators to its satisfaction.

State Farm then researched the Quasts' insurance claim history and discovered that in addition to the property theft claims filed with State Farm in November 2007 and February 2008, they had filed property theft claims in 1991, 1995, 2000, January 2004 and April 2004 with other insurance companies. At about this same time, State Farm again requested that the Quasts provide any further documentation to support their claim. In response, Sean stated on November 21, 2008, that he had provided all the information available.

State Farm then retained attorney Leatha Wolter of Meagher & Geer, P.L.L.P., to conduct "Examinations Under Oath" (EUO) of the Quasts and to provide her opinion about the Quasts' property loss claim. Before conducting the EUOs, Wolter requested a variety of documents from the Quasts, including: income tax returns; bank, checking and credit card statements; evidence of indebtedness; invoices; receipts; canceled checks; and other sales documents that could verify existence and ownership of the allegedly stolen property. The Quasts' tax returns report negative revenue of $129,994 in 2007; $104,397 in 2006; and $75,335 in 2005. Wolter conducted the EUOs on February 10, 2009, gave the Quasts an opportunity to complete errata sheets and to provide any other documentation supporting their claim, and engaged in various follow-up correspondence and conversations with the Quasts and their attorney.

On June 9, 2009, Wolter provided State Farm with her opinion that the Quasts' property loss claim could appropriately be denied based on the absence of a theft loss and/or the Quasts' violation of the concealment or fraud provision of the governing homeowners policy. Wolter's opinion was based on a number of factors, including: (1)

the absence of documentation verifying the purchase and/or ownership of the allegedly stolen property; (2) the fact that the type of property allegedly stolen was old, non-working equipment, while newer more valuable items were not stolen; (3) a significant amount of other valuable property left behind by the alleged thieves; (4) the Quasts did not replace the allegedly stolen personal property, except for a DVD player; (5) the Quasts' significant and numerous prior theft claims; (6) the Quasts provided inconsistent information about the missing items; and (7) the Quasts' monthly expenses exceeded their income, providing a possible financial motive to fabricate a claim.

After receiving Wolter's opinions, State Farm conducted an independent internal review of all the materials and evidence it had gathered to date. Three separate individuals conducted the review: a claims representative; a team manager; and a section manager. Again, the review resulted in an inability to resolve the triggered NICB indicators satisfactorily.

The review confirmed that many of the concerns initially raised remained unresolved, including that: there was a lack of documentation to verify ownership of a majority of the allegedly stolen items; some of items allegedly stolen were not the type typically taken by thieves; a number of more valuable items were left behind; and some of Sean's representations were inconsistent with the police report, as well as with some of Susan's representations. The review additionally raised concerns in light of the Quasts' debts and money judgments. State Farm also considered the fact that an independent review by outside legal-counsel resulted in an opinion that the claim could appropriately

be denied. On June 18, 2009, State Farm informed the Quasts that their September 2008 property loss claim was denied.

## OPINION

### I. Summary Judgment Standard

Defendant State Farm has moved for summary judgment on plaintiffs' bad faith and statutory interest claims, but not their breach of contract claim. Under Fed. R. Civ. P. 56, summary judgment is appropriate "when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Goldstein v. Fidelity & Guaranty Insurance Underwriters, Inc.*, 86 F.3d 749, 750 (7th Cir. 1996) (citing Fed. R. Civ. P. 56); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The district judge's function in a summary judgment motion "is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Additionally, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* at 248.

Though all reasonable inferences from undisputed facts should be drawn in favor of the nonmoving party, *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999), the Quasts must "show through specific evidence that a triable issue of fact remains on issues for which [they] bear[] the burden of proof at trial[;] the evidence submitted in support of [their] position must be sufficiently strong that a jury could reasonably find for [them]." *Knight v. Wiseman*, 590 F.3d 458, 463-64 (7th Cir. 2009)

8

(internal quotation omitted). Because no jury could reasonably find in favor of the Quasts on their bad faith and statutory interest claims, defendant State Farm is entitled to summary judgment on those claims.

## II. Bad Faith

Under Wisconsin law, a claim for bad faith against an insurer is a tort claim, separate and distinct from any claim for breach of the underlying insurance contract. *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 686, 271 N.W.2d 368, 374 (1978).[4] To establish an insurer's "breach of its duty of good faith in dealing with its insured," plaintiff must show (1) "the absence of a reasonable basis for denying benefits of the policy" and (2) "the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Id.* at 690-91.

Determining whether an insured has satisfied the first element requires an objective analysis that at its core asks whether the validity of the insurance claim is "fairly debatable." *Farmers Auto. Ins. Ass'n v. Union Pac. Ry. Co.*, 2008 WI App 116, ¶25, 313 Wis. 2d 93, 116, 756 N.W.2d 461, 472. As the Wisconsin Supreme Court put it in *Anderson*, the question is whether "a reasonable insurer under the circumstances [would] have denied or delayed payment of the claim under the facts and circumstances." 85 Wis. 2d at 692. The second element is a subjective one that looks into what the insurer knew or should have known. *Id.* at 693. An insurer can only be found liable under this

---

[4] Neither party disputes that Wisconsin law applies in this case. In the absence of a dispute over choice of law, the court will apply the law of the forum state. *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283 (7th Cir. 2002).

element "where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." *Id.*

To survive defendant's summary judgment motion, therefore, plaintiffs need only produce sufficient evidence from which a jury would be permitted to find that the defendant had no reasonable basis to deny plaintiffs' property loss claim. Yet this they cannot do. Instead, the undisputed facts permit but one reasonable conclusion: plaintiffs' property loss claim was fairly debatable. Similarly, no reasonable jury could find on the record here that State Farm believed otherwise or acted in reckless disregard of contrary evidence. Accordingly, defendant's motion for summary judgment on plaintiffs' bad faith claim will be granted.

Defendant State Farm provides a list of reasons on which to fairly debate plaintiffs' property loss claim. As an initial matter, the alleged theft occurred a mere 3 days before plaintiffs' homeowners insurance policy was to expire with no hope of renewal. This was because plaintiffs had already filed claims on that same policy for two other thefts from their lake home within the previous year, with reported property losses of over $70,000.

Speaking with plaintiffs did not relieve defendant's concerns with the timing of the alleged September 2008 theft. Instead, Sean and Susan Quast provided inconsistent information about some missing items and lacked the kind of documentation one might reasonably expect to show the existence and ownership of allegedly stolen items of significant value, such as receipts, bank or credit card statements, pictures, writings or any other form of contemporaneous proof of purchase or ownership.

10

The Quasts' also concede that the allegedly stolen property was predominately old, non-working equipment, while the thieves left behind newer more valuable property items.[5] Additionally, plaintiffs had an impressive history of filing property theft claims, having filed no less than five with other companies. Plaintiffs' apparent, rapidly declining financial condition also provided motive to commit insurance fraud to help pay for debts and expenses. In particular, the Quasts' tax returns suggest they had been living well beyond their income for some time.

Plaintiffs ask the court to offset all of the above based on plaintiffs' essentially uncorroborated claim that their lake property had been robbed of undocumented, valuable items for the third time in a year. This alone is simply not enough to get to a jury on a bad faith claim. In light of the information defendant had before it, the court finds as a matter of law that plaintiffs' property loss claim was fairly debatable and there is no evidence from which a reasonable jury could find otherwise.

Moreover, a review of defendant's conduct here permits no reasonable inference that it knew of or recklessly disregarded contrary evidence. On the contrary, the process State Farm used to investigate plaintiffs' claim has not been criticized by plaintiffs and was appropriate under the circumstances. State Farm then subjected the results of its investigation to a reasonable and essentially uncriticized evaluation and review process.

---

[5] For example, Sean said that one of the stolen items was a tiller that he had obtained for free on the side of the road a couple weeks before the theft. (Lee Aff., dkt. #16, ex. D at 02043.) Although he had never used the tiller and it leaked gas, he valued the tiller at approximately $1000. (*Id.*) Also stolen was a 20-year-old irrigation pump that plaintiffs' had never used. (*Id.* at 02044.) Items the thieves did not take included fishing rods, a 2005 four-wheeler, a battery charger and tools. (*Id.* at 02045.)

The facts establish that defendant State Farm not only investigated plaintiffs' property loss claim in accordance with its customary practices, but when the investigation raised concerns about fraud, plaintiffs' claim was sent to defendant's Special Investigative Unit, which is trained in handling claims that have questionable validity. Defendant also hired an outside attorney to engage in a further independent investigation of plaintiffs' claim, provide plaintiffs' an additional opportunity to support their claim and only then to opine about the claim's validity. Finally, after receiving the attorney's opinion, defendant conducted an additional review of all the evidence and materials obtained in the investigation before deciding to deny plaintiffs' property loss claim.

Absent some evidence that State Farm's suspicions were a smoke screen or undermined by other, objective facts establishing the bono fides of the insured's claim, no reasonable jury could find State Farm had knowledge of, or recklessly disregarded, a lack of a reasonable basis to deny the Quasts' claim. *See Anderson*, 85 Wis. 2d at 691 ("Whether a claim is 'fairly debatable' also implicates the question whether the facts necessary to evaluate the claim are properly investigated and developed or recklessly ignored and disregarded.").

Without prejudging whether or not plaintiffs' claim was in fact fraudulent, plaintiffs fail to provide any evidence or argument to support a finding that defendant's investigation, evaluation or review of plaintiffs' claim was anything but proper and reasonable. Instead, plaintiffs essentially contend that defendant should simply have taken plaintiffs at their word. That is not the standard.

Plaintiffs do contend that defendant was wrong about their actual financial situation, which would at least undermine the motive State Farm believed the Quasts had to file a fraudulent insurance claim. Even viewing the facts in a light most favorable to plaintiffs, however, the health of their financial situation was problematic. Accepting plaintiffs' proposed facts about Sean Quast's school loan debt and excluding that debt from consideration, at the time the Quasts filed their insurance claim they were servicing roughly $450,000 in loans, reporting losses to the IRS averaging roughly $100,000 for each of the previous three years, and spending more than they earned. Regardless of plaintiffs' actual financial situation, these facts were certainly grounds to suspect motive. Moreover, plaintiffs' financial situation was only one of many different factors that supported a good faith denial of the claim.

Plaintiffs also challenge defendant's reliance on NICB suspicious claims indicators in denying plaintiffs' claim, arguing that reliance on the indicators is unreasonable because the NICB is funded by insurance companies. Ignoring plaintiffs' failure to provide any facts to support how the NICB is funded, this argument is still a non-starter. Indeed, who else is likely to fund the development of, or for that matter be better situated to identify, meaningful, recurring indicia of fraudulent insurance claims activity than the insurance industry. The more valid criticism would be of the indicators themselves, but the triggered indicators -- such as losses occurring just before coverage ceased, repetitive loss claims within the preceding year and absence of records for recent purchases of significant value -- are common-sense indicators of possible fraud.

Here, State Farm had before it on the one hand, plaintiffs' somewhat inconsistent story about their lake home being robbed for the third time in one year of valuable, yet undocumented items and on the other hand, not unreasonable questions about: the validity of the claim, including submission of a property loss claim just before coverage terminated, repeated claims on the same property within a year; theft of old, non-functioning property items, while leaving newer, more valuable property items behind; and a lack of any documentation establishing existence and ownership of much of the claimed valuable stolen property. These and other relevant facts and circumstances create a genuine dispute about whether the September 17, 2008 theft actually occurred -- an issue that must be resolved at trial in addressing plaintiffs' breach of contract claim -- and that same fairly debatable dispute entitles defendant to challenge the validity of plaintiffs' story without being subject to a bad faith claim. *Anderson*, 85 Wis. 2d at 691 ("[W]hen a claim is 'fairly debatable,' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law.").[6]

---

[6] As defendant points out, the Seventh Circuit has upheld a grant of summary judgment on a bad faith claim in a case applying Indiana law, which is similar to Wisconsin law. While the case is merely persuasive authority, it deserves consideration, which plaintiffs do not address. In *Backwater, Inc. v. Penn-American Ins. Co.*, 448 F.3d 962, 964 (7th Cir. 2006), an insured nightclub challenged the entry of summary judgment in favor of its insurer on its bad faith claim. The insurer relied on several suspicious facts to deny the claim, including the nightclub's recent increase in coverage, recent inquires into the alarm company's monitoring of the building and the "unusually thorough" nature of the vandals. *Id.* The nightclub argued that the evidence was circumstantial, proved nothing and was equally open to innocent interpretation. *Id.* The appellate court explained that although conflicting inferences could be drawn from the facts, the insurer was "free, within the constraints of reason and good faith, to evaluate the evidence and draw its own conclusion about the source of the vandalism." *Id.* Rather than being evidence of bad faith, the conflicting inferences were evidence of a good-faith dispute. *Id.* Similarly, although a jury may decide that a theft did occur as the Quasts claim, the outcome is not

### III. <u>Statutory Interest</u>

Under Wisconsin Statute § 628.46(1), "[u]nless otherwise provided by law, an insurer shall promptly pay every insurance claim. A claim shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of the loss. . . . All overdue payments shall bear simple interest at the rate of 12% per year." The statute also provides that "[a]ny payment shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment, notwithstanding that written notice has been furnished to the insurer." *Id.* The Wisconsin Supreme Court has explained that "'reasonable proof' means that amount of information which is sufficient to allow a reasonable insurer to conclude that it may not be responsible for payment of a claim. Generally, reasonable proof is equated with whether coverage is considered 'fairly debatable.'" *Froedtert Mem'l Lutheran Hosp., Inc. v. Nat'l States Ins. Co.*, 2009 WI 33, ¶59, 317 Wis. 2d 54, 81, 765 N.W.2d 251, 264 (internal quotations omitted).

Defendant contends that the fate of plaintiffs' statutory interest claim is tied to their bad faith claim because the standard is the same for both claims. Plaintiffs do not disagree with defendant's contention, arguing instead that because summary judgment is not appropriate on their bad faith claim, neither is summary judgment appropriate on their statutory interest claim. Because the court has already found a reasonable jury could not find in favor of plaintiffs on their bad faith claim, it similarly follows that a jury

---

so clear that defendant's decision to deny their claim could be found a product of bad faith.

15

could not find in favor of plaintiffs on their statutory interest claim. Accordingly, defendant is entitled to summary judgment on plaintiffs' statutory interest claim as well.

## ORDER

IT IS ORDERED that defendant State Farm Fire & Casualty Company's motion for partial summary judgment (dkt. #14) on plaintiffs' bad faith and statutory interest claims is GRANTED.

Entered this 26th day of October, 2010.

                              BY THE COURT:

                              /s/

                              _____
                              WILLIAM M. CONLEY
                              District Judge